IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
UNITED STATES OF AMERICA,        )
                                 )
              Plaintiff,         )
                                 )
         v.                      )         1:13CV861
                                 )
THE STATE OF NORTH CAROLINA,     )
et al.,                          )
                                 )
              Defendants.        )
```

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, District Judge.

This case brought by the United States Department of Justice ("United States") is one of several related cases involving challenges to recent amendments to North Carolina's election laws. Before the court is a motion by Judicial Watch, Inc. ("Judicial Watch"), and Christina Kelley Gallegos-Merrill ("Gallegos-Merrill," and collectively, the "Proposed Intervenors") to intervene as defendants pursuant to Federal Rule of Civil Procedure 24. (Doc. 26.) The Proposed Intervenors seek intervention of right pursuant to Rule 24(a) or, in the alternative, permissive intervention pursuant to Rule 24(b). The United States opposes intervention on several grounds (Doc. 38), and the Proposed Intervenors have filed a reply (Doc. 46). For the reasons set forth herein, the motion

will be denied without prejudice to the Proposed Intervenors'
right to participate as *amici curiae*.

## I.    BACKGROUND

On August 12, 2013, Governor Patrick L. McCrory signed into
law North Carolina Session Law 2013-381, popularly known as the
Voter Information Verification Act or House Bill 589 ("VIVA" or
"HB 589").    (Doc. 1 ¶ 66); see 2013 N.C. Sess. Laws 381,
http://www.ncga.state.nc.us/Sessions/2013/Bills/House/PDF/H589v9
.pdf.   The law enacted several changes to the State's election
laws.    On the same day, two separate organizations along with
several individual plaintiffs filed complaints challenging the
validity of the law pursuant to the Fourteenth and Fifteenth
Amendments to the United States Constitution and Section 2 of
the Voting Rights Act of 1965 ("VRA"), 42 U.S.C. § 1973(a).  See
League of Women Voters of N.C. v. McCrory, 1:13CV660 (M.D.N.C.
filed Aug. 12, 2013); N.C. State Conference of the NAACP v.
McCrory, 1:13CV658 (M.D.N.C. filed Aug. 12, 2013).

On September 30, 2013, the United States filed the above-
captioned case against the State of North Carolina and Kim
Westbrook Strach, in her official capacity as Executive Director
of the North Carolina Board of Elections (collectively the
"State Defendants").    (Doc. 1.)    The complaint alleges that
several provisions of HB 589, including the reduction of the
early voting period (id. ¶¶ 24-34), elimination of same-day

registration (id. ¶¶ 35-38), elimination of out-of-precinct provisional ballots (id. ¶¶ 39-42), and the requirement that voters present a valid photo identification in order to cast a vote (id. ¶¶ 43-50), violate Section 2 of the VRA. The United States alleges both that enforcement of the challenged provisions will have a disparate impact on African-American voters (id. ¶¶ 68-79) and that HB 589 was enacted with a discriminatory purpose (id. ¶¶ 80-92). In addition to an injunction and declaratory judgment pursuant to Section 2, the United States seeks two additional remedies. First, it seeks an order authorizing federal officials to observe elections in North Carolina pursuant to Section 3(a) of the VRA, 42 U.S.C. § 1973a(a). Second, it requests an order subjecting North Carolina to a "preclearance" requirement under Section 3(c) of the VRA, 42 U.S.C. § 1973a(c).

The Proposed Intervenors filed their motion to intervene as defendants on December 10, 2013, along with a proposed answer pursuant to Rule 24(c). (Docs. 26, 26-1.) Both Proposed Intervenors also submitted a declaration. Judicial Watch submitted the declaration of Thomas J. Fitton, the president of Judicial Watch since 1998. (Doc. 26-3 ¶ 2.) Fitton describes the organization as one that "seeks to promote integrity, transparency, and accountability in government and fidelity to the rule of law." (Id.) Judicial Watch has at least 7,260

active members in North Carolina, of whom 143 are registered voters who have actively expressed an interest in intervening in this case. (Id. ¶ 18.) Judicial Watch believes that the reforms contained in HB 589 are necessary to curb election fraud and that the United States' success in this action would "degrade the integrity and accuracy of voter rolls." (Id. ¶ 11.)

Gallegos-Merrill was a Republican candidate in District 2 for the Buncombe County (North Carolina) Board of Commission in 2012. (Doc. 26-2 ¶ 3.) She states that, under the pre-HB 589 regime, some students from Warren Wilson College ("WWC") in Asheville, North Carolina, were permitted to vote in District 2 rather than District 1 in the 2012 elections, ultimately causing her defeat. (Id. ¶¶ 11-13.) According to Gallegos-Merrill, Newsweek has declared WWC one of the most liberal colleges in the nation. (Id. ¶ 4.) The students had originally registered to vote using WWC's main address, which was located in District 1, although some dormitories on WWC's campus are located in District 2. (Id. ¶¶ 7-8.) However, following a reapportionment by the Buncombe County Board of Elections (the "Board"), some WWC students' votes were counted in District 2. (Id. ¶ 11.) Although Gallegos-Merrill was originally declared the winner, following the canvass it was determined that she had lost by 13 votes. (Id. ¶ 13.) Her appeal to the Board was denied. (Id.

4

¶ 15.)  She plans to run again for the same office in 2014 and believes that she would suffer similar harm in the next election without the provisions of HB 589.  (Id. ¶¶ 16, 19–20.)

The United States opposes intervention on several grounds: it contends that the Proposed Intervenors have not demonstrated a protectable interest that would be impaired by the action, that they have not demonstrated that the State Defendants would not adequately represent such interest in any event, and that they seek to pursue matters that are irrelevant and collateral to this litigation.  (Doc. 38.)  According to the Proposed Intervenors, the State Defendants do not oppose their motion. (Doc. 26 at 1.)

## II.  ANALYSIS

The Proposed Intervenors seek to intervene as defendants in this case pursuant to Federal Rule of Civil Procedure 24(a) and (b).  Each basis will be addressed in turn.

### A.  Intervention of Right

"Under Rule 24(a)(2), a district court must permit intervention as a matter of right if the movant can demonstrate '(1) an interest in the subject matter of the action; (2) that the protection of this interest would be impaired because of the action; and (3) that the applicant's interest is not adequately represented by existing parties to the litigation.'"  Stuart v. Huff, 706 F.3d 345, 349 (4th Cir. 2013) (quoting Teague v.

5

Bakker, 931 F.2d 259, 260-61 (4th Cir. 1991)). The Proposed Intervenors and the United States devote a significant portion of the briefing on this motion to the issue of whether the Proposed Intervenors possess a sufficient protectable interest. However, the court will not reach the first two factors because it concludes that, assuming (without deciding) they have been met, the Proposed Intervenors fail to demonstrate that such interests will not be adequately represented by the State Defendants.

When a State statute is challenged and a proposed intervenor shares a common objective with the State to defend the validity of the statute, the proposed intervenor "must mount a strong showing of inadequacy" to be entitled to intervention of right. Stuart, 706 F.3d at 352. This is so because, as the Fourth Circuit has explained, "when a statute comes under attack, it is difficult to conceive of an entity better situated to defend it than the government." Id. at 351. To rebut the presumption of adequacy, the Proposed Intervenors must show either collusion between the existing parties, adversity of interests between themselves and the State Defendants, or nonfeasance on the part of the State Defendants. See id. at 350, 352-55.

The Proposed Intervenors argue that the State Defendants will not adequately represent their interests for three

6

principal reasons.  First, the Proposed Intervenors argue that only they will insist that a causal link be shown between the challenged provisions of HB 589 and the alleged disparate impact, pointing to the fact that the State Defendants have not raised a "lack of causation" defense in their answers to the complaint.  (Doc. 27 at 14–17.)  Next, they claim that the State Defendants will not adequately represent their interest in making public records requests, and specifically that, "[i]f the United States becomes involved in approving North Carolina's voting laws and procedures, it will complicate the process of obtaining documents and make the State less willing to cooperate."  (Id. at 17.)  Finally, the Proposed Intervenors contend that the State Defendants will not adequately represent their interest in maintaining the accuracy of voter rolls.  Particularly, they wish to "show that the potential for various kinds of electoral fraud is greater where registration lists are made less accurate by same-day registration during early voting, out-of-precinct voting, or the absence of photo ID."  (Id. at 18 (citing Doc. 26–3 ¶¶ 11–12).)

None of these contentions is sufficient to rebut the presumption that the State Defendants will adequately represent the Proposed Intervenors' interests.  First, it is undisputed that the Proposed Intervenors and the State Defendants both seek to uphold HB 589.  While the Proposed Intervenors may have a

particularized interest and fervent desire to protect the statute, "stronger, more specific interests do not adverse interests make." Stuart, 706 F.3d at 353. As the Fourth Circuit explained, "would-be intervenors will nearly always have intense desires that are more particular than the state's (or else why seek party status at all). Allowing such interests to rebut the presumption of adequacy would simply open the door to a complicating host of intervening parties with hardly a corresponding benefit." Id.

Nor can the Proposed Intervenors' intention to emphasize certain legal arguments at the expense of others create adversity of interests or malfeasance. "[D]isagreement over how to approach the conduct of the litigation is not enough to rebut the presumption of adequacy." Id. (citing Perry v. Proposition 8 Official Proponents, 587 F.3d 947, 954 (9th Cir. 2009) ("Mere differences in litigation strategy are not enough to justify intervention as a matter of right.")). In any event, there is no evidence at this early stage of the litigation that the State Defendants will not pursue the Proposed Intervenors' chosen argument regarding causation. The fact that the State Defendants did not raise the lack-of-causation defense in their answers does not foreclose them from arguing the point in the merits briefing, particularly when a lack of causation is

generally not regarded to be an affirmative defense that must be pleaded separately.  See Fed. R. Civ. P. 8(c).[1]

The Proposed Intervenors' other two interests are also sufficiently aligned with those of the State Defendants.  The Proposed Intervenors allege that the State will be less willing or able to comply with its public records request should it be subject to a "preclearance" requirement.  But the State has, of course, a great incentive to litigate vigorously to *avoid* being subject to such federal supervision.  Similarly, the Proposed Intervenors' and the State Defendants' interests are aligned with respect to the Proposed Intervenors' desire to introduce evidence about voter fraud under the pre-HB 589 regime.  Both seek to defend the statute on the ground it will reduce election fraud.  Thus, there are no grounds to conclude that the interests of the State Defendants and the Proposed Intervenors are adverse to one another.

The posture of this case is remarkably similar to that of Stuart.  There, the plaintiffs challenged a North Carolina law requiring certain informed consent procedures prior to the

---

[1] The Proposed Intervenors highlight their concern by pointing to the complaint's allegation that North Carolina Attorney General Roy Cooper openly opposed and criticized HB 589 before Governor McCrory signed it.  (See Doc. 1 ¶ 67.)  However, the Proposed Intervenors have not demonstrated that the Attorney General will not fulfill his obligation to aggressively defend laws duly enacted by the General Assembly. Moreover, the docket reflects that the Attorney General has retained outside co-counsel for the State Defendants and that the Governor has retained separate counsel.

performance of an abortion.  Stuart, 706 F.3d at 347; see N.C. Gen. Stat. § 90–21.80, et seq.  A group of pro-life physicians and others sought to intervene as defendants, seeking to uphold the statute.  Stuart, 706 F.3d at 347.  The Fourth Circuit affirmed the district court's denial of intervention of right on the ground that the would-be intervenors failed to rebut the presumption that the State, which defended the statute vigorously, did not adequately represent their interests.  Id. at 355.  The Proposed Intervenors here are in an identical position.  They possess an interest in the outcome of this case, but not all parties with strong feelings about or an interest in a case are entitled, as a matter of law, to intervene.  Because the Proposed Intervenors cannot rebut the presumption that their interests are adequately represented by the State Defendants, their motion for intervention of right will be denied.

   **B.   Permissive Intervention**

   The Proposed Intervenors also seek permissive intervention under Rule 24(b).  The court may permit anyone who "has a claim or defense that shares with the main action a common question of law or fact" to intervene on timely motion.  Fed. R. Civ. P. 24(b)(1)(B).  "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ.

P. 24(b)(3); see Bussian v. DaimlerChrysler Corp., 411 F. Supp. 2d 614, 631 (M.D.N.C. 2006).

In Stuart, the Fourth Circuit also affirmed the district court's denial of permissive intervention. 706 F.3d at 355. The court explained that adding the intervenors would complicate discovery in the case and result in possible delay without accruing any benefit to the existing parties. Id. The court also noted that the would-be intervenors were not without recourse, because they could seek leave to file an *amicus curiae* brief both in the district court and in the Fourth Circuit. Id. Similarly, the United States does not object in this case to the Proposed Intervenors' participation as *amici*. (Doc. 38 at 19–20.)

The court concludes that, on the record before it, participation of the Proposed Intervenors as two additional parties would consume additional and unnecessary judicial resources, further complicate the discovery process, potentially unduly delay the adjudication of the case on the merits, and generate little, if any, corresponding benefit to the existing parties. See Brock v. McGee Bros. Co., 111 F.R.D. 484, 487 (W.D.N.C. 1986) (denying permissive intervention where interests were adequately represented and intervention would needlessly increase the cost and delay disposition of the case). This is particularly so given Judicial Watch's professed interest in

11

using the litigation as a vehicle to enhance its ability to collect records from the parties. (See Doc. 27 at 11.) Therefore, the motion for permissive intervention will be denied.[2]

While intervention is denied, the court recognizes that the Proposed Intervenors may bring a useful perspective and expertise to the litigation. In the event they conclude that they have a unique contention to make, or that the State Defendants have not raised an appropriate argument, they may follow the procedure set out in Local Rule 7.5 and this court's case scheduling order (Doc. 30) and file a motion for leave to file an *amicus* brief along with a brief and a proposed order.

## III. CONCLUSION

For the reasons stated,

IT IS THEREFORE ORDERED that the Proposed Intervenors' motion to intervene (Doc. 26) is DENIED.

/s/    Thomas D. Schroeder
United States District Judge

February 6, 2014

---

[2] The court's decision on this point is not inconsistent with its prior ruling granting several individuals leave to intervene as plaintiffs in League of Women Voters. (See Doc. 62 in case 1:13CV660 at 6–8.) There, additional discovery could not be avoided because the intervenors could have simply brought their own case had they been denied intervention. (Id. at 7.) In addition, they raised claims not brought by the original plaintiffs. (Id. at 8.) Here, the addition of defendants will increase the already heavy burden created by discovery in these cases with little, if any, corresponding benefit to the existing parties. Any benefit that the Proposed Intervenors could bring to the litigation may be achieved as *amici*, without necessitating further discovery.