IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| NORTH CAROLINA STATE CONFERENCE OF THE NAACP, et al., <br><br> Plaintiffs, <br><br> v. <br><br> PATRICK LLOYD MCCRORY, in his official capacity as the Governor of North Carolina, et al., <br><br> Defendants. | Civil Action No. 1:13-CV-658 |
| LEAGUE OF WOMEN VOTERS OF NORTH CAROLINA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> THE STATE OF NORTH CAROLINA, et al., <br><br> Defendants. | Civil Action No. 1:13-CV-660 |
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> THE STATE OF NORTH CAROLINA, et al., <br><br> Defendants. | Civil Action No. 1:13-CV-861 |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION IN LIMINE**

# I. INTRODUCTION

Defendants respectfully file this memorandum in support of their motion *in limine* to exclude the following evidence: (1) a supplemental report by NAACP expert witness Allen Lichtman served on June 9, 2015; (2) Dr. Lichtman's matching analysis comparing the database maintained by the State Board of Elections and the Division of Motor Vehicles for purposes of proving discriminatory intent by the General Assembly; (3) emails from customers of the Division of Motor Vehicles and evidence and testimony regarding the contents of emails sent to the North Carolina Division of Motor Vehicles as inadmissible hearsay; (4) expert testimony on legal conclusions; and (5) newspaper articles or testimony by experts relying on newspaper articles.

# II. ARGUMENT

### 1. Dr. Lichtman's supplemental report should not be allowed.

On June 9, 2015, defendants were served with a "Supplemental Report" prepared by NAACP expert Dr. Allen Lichtman. (*See* Exhibit 1) This report purports to describe a violation of the National Voter Registration Act of 1993 ("NVRA") based upon Dr. Lichtman's opinion that public assistance voter registration "abruptly and substantially declined since 2013" (Ex. 1, pp. 1, 2)

Defendants have been advised that the NAACP plaintiffs intend to move to exclude (1) an updated analysis by the North Carolina State Board of Elections ("SBOE") of 2012 Same Day Registration Voters in 2012 (served on plaintiffs on June 6, 2015 or three days before the Lichtman report was served); (2) a report by SBOE and its executive director Kim Strach providing a final and comprehensive analysis of

provisional voters in 2014 (served on plaintiffs on June 12, 2015); (3) a report by the Commissioner of North Carolina's Division of Motor Vehicles (served on plaintiffs on June 15, 2015);[1] and (4) a report prepared by defendants' expert Dr. Janet Thornton for the state court photo ID case (served on plaintiffs in this case on June 15, 2015). Defendants also will offer compilations on early voting that are based upon data already produced in discovery and which will be marked as trial exhibits. Defendants will argue the merits of whether these reports and exhibits should be excluded if plaintiffs' file their motion or object to their introduction into evidence. In any case, if plaintiffs' motion to exclude these reports is granted, then Dr. Lichtman's supplemental report should also be excluded because it was served after the SBOE report on same-day registration voters and only a few days before SBOE's comprehensive report on provisional voters and Commissioner Thomas's report.

In any case, assuming Dr. Lichtman's report is admitted, defendants object to its admission for purposes of proving a violation of the NVRA as it is not relevant to any claim or defense in these consolidated cases which involve no NVRA claims. Dr. Lichtman has offered his supplemental report to purportedly show that public assistance voter registration has declined since January 2013 and that this evidence purportedly shows how the General Assembly engaged in institutional discrimination when it enacted VIVA.

---

[1] The Commissioner's report relates strictly to plaintiffs' claims concerning photo ID. A motion to exclude his report may not be ripe for a ruling by the Court.

Dr. Lichtman's report is not relevant because it has no logical connection to any of the claims in this case. Plaintiffs have challenged the elimination of same-day registration and have not alleged a violation of the NVRA. If North Carolina has violated the NVRA, which defendants dispute, the remedy is to file a lawsuit to force the State to comply with its obligations under the NVRA. Plaintiffs can cite to no case where a state has been ordered to adopt same-day registration because of a violation of the NVRA.

Defendants further object to any proposed amendment to plaintiffs' pleadings prior to or during trial to assert a violation of the NVRA. Dr. Lichtman has not been deposed regarding his supplemental report and defendants have not been able to fully investigate the allegations made by Dr. Lichtman. Any such amendment would cause substantial prejudice to defendants. *Equal Rights Center v. Miles Bolton Associates*, 602 F.2d at 597, 603 (4th Cir. 2010).

> **2. Dr. Lichtman's supplemental report and his matching analysis comparing the databases of the SBOE and the Division of Motor Vehicles is inadmissible on the issue of discriminatory intent.**

This evidence is also inadmissible for the purposes asserted by Dr. Lichtman. There is no evidence or indication that the General Assembly was aware of alleged NVRA violations when it enacted VIVA. The Fourth Circuit has regularly held that evidence that was not known to the decision-maker at the time of its decision is not relevant to whether the decisionmaker engaged in discrimination at the time of its decision. *Dowe v. Total Action Against Poverty in Roanoke Valley*, 143 F.3d 657 (4th Cir. 1998).

4

For these same reasons, a matching report made by Dr. Lichtman for purposes of showing intentional discrimination by the General Assembly should also be excluded. While the matching analysis published by the SBOE in April 2013 was available to the General Assembly when it enacted VIVA, there is no evidence – and there can be no evidence – that Dr. Lichtman's matching analysis and conclusions were known to the General Assembly when it enacted VIVA in 2013. This is because Dr. Lichtman's matching report was prepared in 2014. It was based upon a different snapshot of SBOE's registration rolls and a different snapshot of DMV's data than the information relied upon and used by SBOE to make its April 2013 matching report. The General Assembly had no knowledge, for example, of racial percentages of persons with suspended or expired driver's licenses because that information was not reported by the SBOE in April 2013. Nor did the General Assembly have knowledge of the racial percentages of persons over the age of 70 with expired driver's licenses. Accordingly, using this post hoc information to prove discrimination would be substantially prejudicial to defendants and should be excluded as evidence at trial.

### 3. Emails from DMV customers constitute inadmissible hearsay under Rule 801 and 802

Plaintiffs intend to offer into evidence exhibits that contain emails sent by DMV customers that report statements allegedly made by DMV employees.[2] For example, some customers alleged that DMV employees provided false information about photo IDs or told them that the DMV charged fees for ID cards. Plaintiffs intend to use these

---

[2] It also may be premature for this Court to rule on this matter.

5

emails for the truth of the matters asserted: that DMV employees told customers that they would have to pay to acquire a voter ID. As explained below, these emails constitute hearsay under Rule 801, F. R. Evid., when offered to prove the truth of the matters asserted therein. Further, the emails that allege DMV employees made certain statements to customers constitute hearsay within hearsay under Rule 805. F. R. Evid.

Federal Rule of Evidence 801 defines hearsay as a statement, other than the one made by the declarant, while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. *See* Fed. R. Evid. 801. Federal Rule of Evidence 802 prohibits the admission of hearsay with very limited exceptions. *See* Fed. R. Evid. 802. If there is hearsay within hearsay, each piece of hearsay must satisfy an exception to be admissible. *See* Fed. R. Evid. 805.

It is well settled that emails constitute hearsay under Rule 801 and cannot be admitted to prove the truth of the matters asserted therein. *United States v. Cone*, 714 F.3d 197, 219 (4th Cir. 2013) (finding error when district court admitted customer email complaints without limiting instruction that emails could not be considered for the truth of the matters asserted); *United States v. Levy*, 2008 WL 373646, at *5 (E.D. Va. Feb. 8, 2008) (stating that if emails are offered "for the truth of their contents," then they are hearsay and inadmissible in the absence of an applicable hearsay exception). Emails that discuss statements made by third parties constitute hearsay within hearsay. *United States v. Jefferson*, 2009 WL 2447845, at *1 (E.D. Va. Aug. 8, 2009) (holding that email contents that "merely restate statements" made by others qualify as hearsay within hearsay), *Reyes v. Jeffcoat*, 2012 WL 4009641, at *2 (D.S.C. Sept. 12, 2012) (excluding

emails containing hearsay within hearsay because the court could find no authority to admit such "second level" hearsay statements).

Here, plaintiffs hope to rely on multiple emails from DMV customers to establish that DMV employees provided inaccurate information about obtaining no-fee voter IDs, including that IDs cost $10. Rule 802 prohibits admission of such evidence to prove either the truth of the matter asserted in the email or to prove that the statements quoted in the emails were in fact made. Further, courts have held that customer emails do not qualify as business records subject to hearsay objection under Rule 803(6). *United States v. Cone*, 714 F.3d 197, 219 (4th Cir. 2013) (holding that the fact that emails were kept as part of the "regular operation of the business" was insufficient to render them business records under Rule 803(6)). The emails also cannot be admitted as statements of a party opponent under Rule 801(2) because the emails are not statements made by DMV employees, but rather statements made by third-party customers.

> **4. Experts may not testify that defendants engaged in discrimination because such testimony constitutes an impermissible legal conclusion under Rule 702**

Federal Rule of Evidence 702 allows expert testimony when an expert's knowledge "will *help* the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702 (emphasis added). Courts in the Fourth Circuit consistently hold that "[t]he touchstone of the rule is whether the testimony will assist the jury." *United States v. Offill*, 666 F.3d 168, 175 (4th Cir. 2011). Rule 704 allows expert testimony that "embraces the ultimate issue," but it does not overrule Rules 701 and 702 such that an expert may tell a factfinder what result to reach. Fed. R. Evid. 704 advisory comm. nn. It

7

is well settled that expert testimony that states a legal conclusion is less likely to assist the trier of fact in making its determination. *United States v. Barile*, 286 F.3d 749, 760 (4th Cir. 2002). "The role of the district court, therefore, is to distinguish opinion testimony that embraces an ultimate issue of fact from opinion testimony that states a legal conclusion." *Id*.

Courts consider two main factors to determine whether an expert opinion constitutes a legal conclusion. First, courts examine whether the language used by the expert tracks the language of the legal principle at issue. *United States v. Perkins*, 470 F.3d 150, 158 (4th Cir. 2006). Next, they consider whether the terms used by the expert have a distinct, specialized meaning in law. *Barile*, at 760 (quoting *Torres v. Cnty. of Oakland*, 758 F.2d 147, 151 (6th Cir. 1985). When experts assert that an entity engaged in "discrimination," the testimony "nearly always invades the province of the jury" in violation of Rule 702. *Perkins*, at 158.

Here, expert testimony that defendants engaged in "intentional discrimination" clearly constitutes an improper legal conclusion. Section 2 of the Voting Rights Act "prohibits all forms of voting discrimination." *Thornburg v. Gingles*, 478 U.S. 30, 45 n. 10 (1986). A Section 2 violation can "be established by proof of discriminatory results alone." *Chisom v. Roemer*, 501 U.S. 380, 404 (1991). Given these legal standards, expert testimony that defendants engaged in "intentional discrimination" or that SL 2013-381 produced discriminatory results is equivalent to a legal conclusion that defendants violated the Voting Rights Act. It is the task of the factfinder, not plaintiffs' experts, to determine whether defendants violated the applicable law. As such, the Court should

8

exclude plaintiffs' experts from offering legal conclusions that defendants engaged in intentional discrimination.

### 5. Newspaper articles that plaintiffs attempt to use to support their arguments are inadmissible hearsay under Rules 801 and 802.

Plaintiffs intend to present experts to testify about the allegedly discriminatory motive behind the passage of SL 2013-381 and its allegedly discriminatory effects. Plaintiffs and their experts rely extensively on unsubstantiated news articles to support their conclusions. As explained below, news articles constitute inadmissible hearsay under Rule 801 of the Federal Rules of Evidence when offered to prove the truth of the matter asserted therein. Because the news articles constitute inadmissible hearsay, neither plaintiffs nor their experts may be allowed to testify regarding their contents to prove the truth of the matters asserted therein. As such, the Court should exclude plaintiffs from introducing any news articles into evidence and prevent their experts from testifying about the contents of the articles to prove the truth of the matters asserted therein.

Federal Rule of Evidence 801 defines hearsay as a statement, other than the one made by the declarant, while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. *See* Fed. R. Evid. 801. Federal Rule of Evidence 802 prohibits the admission of hearsay with very limited exceptions. *See* Fed. R. Evid. 802. If there is hearsay within hearsay, each piece of hearsay must satisfy an exception to be admissible. *See* Fed. R. Evid. 805.

It is well settled that newspaper articles constitute hearsay under Rule 801. *Gantt v. Whitaker*, 57 F. App'x 141, 150 (4th Cir. 2003) (noting that the Fourth Circuit

9

"consistently held that newspaper articles are inadmissible hearsay to the extent that they are introduced 'to prove the factual matters asserted therein'"); *In re Allen*, 106 F.3d 582, 604 n.13 (4th Cir. 1997) (declaring that the district court improperly considered newspaper articles stating a person's job title because the articles constituted unsworn hearsay "entitled to no weight"); *Hewett v. City of King*, 29 F. Supp. 3d 584, 631 n.31 (M.D.N.C. 2014) (refusing to consider a newspaper article detailing alleged religious songs performed at a September 11th concert because statements from news articles represented inadmissible hearsay and plaintiff failed to substantiate the newspaper's account). Newspaper articles that include quotations from sources constitute hearsay within hearsay. *Horta v. Sullivan*, 4 F.3d 2, 8 (1st Cir. 1993) (refusing to admit a newspaper article quoting the chief of police for defendant town because "the newspaper account [was] hearsay within hearsay").

Here, plaintiffs hope to rely on news articles to attempt establish intent or alleged effects of SL 2013-381 on minority voters and the allegedly discriminatory motive of legislators. Rule 802 prohibits admission of such evidence to prove either the truth of the matter asserted in the article or to prove that the statements quoted in the article were in fact made. *Gantt; Larez v. City of Los Angeles*, 946 F.2d 630, 642 (9th Cir. 1991) (holding that a newspaper article reporting on statements of a police chief was inadmissible hearsay when "offered for the truth of the matter asserted: that [the chief] did in fact make the quoted statement."). As such, the Court should exclude plaintiffs from submitting such articles as evidence to prove the truth of the matters asserted therein.

Plaintiffs also intend to present political scientists to testify regarding the intent and effect of SL 2013-381. Throughout their reports, plaintiffs' experts rely on newspaper articles to support their conclusions. Federal Rule of Evidence 703 allows experts to base their testimony on inadmissible evidence only to the extent that other experts in the field would reasonably rely on such data to form an opinion. Fed. R. Evid. 703. Experts must limit their testimony based on inadmissible hearsay to their expert opinions; they may not address the truth of the matters asserted therein. *See United States v. Dukagjini*, 326 F.3d 45, 58 (2d Cir. 2003) (excluding testimony when an expert tried to use hearsay conversations to establish the truth of the matters asserted rather than fulfilling his role as an expert in drug jargon and holding that "an expert witness may rely on hearsay evidence while reliably applying expertise to that hearsay evidence, but may not rely on hearsay for any other aspect of his testimony.").

If experts rely on inadmissible testimony, they may only disclose the bases for their opinions if the probative value of such a disclosure substantial outweighs the prejudicial effect. Fed. R. Evid. 703(c). Even if the Court allows disclosure, plaintiffs' experts must not attempt to present the inadmissible bases for their opinions for the truth of the matters asserted therein. *Engebretsen v. Fairchild Aircraft Corp.*, 21 F.3d 721, 728 (6th Cir. 1994) (stating that experts may rely on inadmissible data but "[r]ules 702 and 703 do not, however, permit the admission of materials, relied on by an expert witness, for the truth of the matters they contain if the materials are otherwise inadmissible.")

## III. CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant their motion *in limine* to exclude testimony or evidence discussed in this memorandum.

This the 30th day of June, 2015.

>ROY COOPER
>ATTORNEY GENERAL OF NORTH
>CAROLINA
>
>/s/ Alexander McC. Peters
>Alexander McC. Peters
>Senior Deputy Attorney General
>N.C. State Bar No. 13654
>apeters@ncdoj.gov
>
>/s/ Katherine A. Murphy
>Katherine A. Murphy
>Special Deputy Attorney General
>N.C. State Bar No. 26572
>kmurphy@ncdodoj.gov
>
>N.C. Department of Justice
>P.O. Box 629
>Raleigh, NC  27602
>Telephone: (919) 716-6900
>Facsimile: (919) 716-6763
>*Counsel for Defendants North Carolina and State Board of Election Defendants.*
>
>
>OGLETREE, DEAKINS, NASH
>SMOAK & STEWART, P.C.
>
>/s/ Thomas A. Farr
>Thomas A. Farr
>N.C. State Bar No. 10871
>Phillip J. Strach
>N.C. State Bar No. 29456
>thomas.farr@ogletreedeakins.com
>phil.strach@ogletreedeakins.com
>4208 Six Forks Road, Suite 1100
>Raleigh, North Carolina 27609
>Telephone:  (919) 787-9700
>Facsimile:  (919) 783-9412
>*Co-counsel for Defendants North Carolina and State Board of Election Defendants.*

BOWERS LAW OFFICE LLC

By: /s/ Karl S. Bowers, Jr.
Karl S. Bowers, Jr.*
Federal Bar #7716
P.O. Box 50549
Columbia, SC 29250
Telephone: (803) 260-4124
E-mail: butch@butchbowers.com
*appearing pursuant to Local Rule 83.1(d)
*Counsel for Governor Patrick L. McCrory*

By: /s/ Robert C. Stephens
Robert C. Stephens (State Bar #4150)
General Counsel
Office of the Governor of North Carolina
20301 Mail Service Center
Raleigh, North Carolina 27699
Telephone: (919) 814-2027
Facsimile: (919) 733-2120
E-mail: bob.stephens@nc.gov
*Counsel for Governor Patrick L. McCrory*

14

# CERTIFICATE OF SERVICE

I, Thomas A. Farr, hereby certify that I have this day electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will provide electronic notification of the same to the following:

*Counsel for United States of America*:

| | |
|---|---|
| T. Christian Herren, Jr. | Gill P. Beck |
| John A. Russ IV | Special Assistant United States Attorney |
| Catherine Meza | Office of the United States Attorney |
| David G. Cooper | United States Courthouse |
| Spencer R. Fisher | 100 Otis Street |
| Elizabeth M. Ryan | Asheville, NC 28801 |
| Jenigh Garrett | |
| Attorneys, Voting Section | |
| Civil Rights Division | |
| U.S. Department of Justice | |
| Room 7254-NWB | |
| 950 Pennsylvania Avenue, N.W. | |
| Washington, DC 20530 | |

*Counsel for NCAAP Plaintiffs:*

| | |
|---|---|
| Penda D. Hair | Adam Stein |
| Edward A. Hailes, Jr. | TIN FULTON WALKER & OWEN |
| Denise D. Liberman | 312 West Franklin Street |
| Donita Judge | Chapel Hill, NC 27516 |
| Caitlin Swain | astein@tinfulton.com |
| ADVANCEMENT PROJECT | |
| Suite 850 | Thomas D. Yannucci |
| 1220 L Street, N.W. | Daniel T. Donovan |
| Washington, DC 20005 | Susan M. Davies |
| phair@advancementproject.com | K. Winn Allen |
| | Uzoma Nkwonta |
| Irving Joyner | Kim Knudson |
| P.O. Box 374 | Anne Dechter |
| Cary, NC 27512 | Bridget O'Connor |
| ijoyner@nccu.edu | Jodi Wu |
| | Kim Rancour |
| | KIRKLAND & ELLIS LLP |
| | 655 Fifteenth St., N.W. |
| | Washington, DC 20005 |
| | tyannucci@kirkland.com |

*Counsel for League of Women Voter Plaintiffs:*

| | |
|---|---|
| Anita S. Earls<br>Allison J. Riggs<br>Clare R. Barnett<br>Southern Coalition for Social Justice<br>1415 Hwy. 54, Suite 101<br>Durham, NC 27707<br>anita@southerncoalition.org | Laughlin McDonald<br>ACLU Voting Rights Project<br>2700 International Tower<br>229 Peachtree Street, NE<br>Atlanta, GA 30303<br>lmcdonald@aclu.org |
| Dale Ho<br>Julie A. Ebenstein<br>ACLU Voting Rights Project<br>125 Broad Street<br>New York, NY 10004<br>dale.ho@aclu.org | Christopher Brook<br>ACLU of North Carolina Legal Foundation<br>PO Box 28004<br>Raleigh, NC 27611-8004<br>cbrook@acluofnc.org |

*Counsel for the Intervening Plaintiffs*:

| | |
|---|---|
| John M. Davaney<br>jdevaney@perkinscoie.com<br>Marc E. Elias<br>melias@perkinscoie.com<br>Kevin J. Hamilton<br>khamilton@perkinscoie.com<br>Elisabeth Frost<br>efrost@perkinscoie.com<br>PERKINS COIE, LLP<br>700 Thirteenth Street, N.W., Suite 600<br>Washington, D.C. 20005-3960 | Edwin M. Speas, Jr.<br>espeas@poynerspruill.com<br>John W. O'Hale<br>johale@poynerspruill.com<br>Caroline P. Mackie<br>cmackie@poynerspruill.com<br>POYNER SPRUILL, LLP<br>301 Fayetteville St., Suite 1900<br>Raleigh, NC 27601 |

This the 30th day of June, 2015.

OGLETREE, DEAKINS, NASH
SMOAK & STEWART, P.C.

/s/ Thomas A. Farr
Thomas A. Farr

21584553.1